UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
(Civil Division)

DONATUS U. DURU )
1035 Ward Street )
Laurel, Maryland 20707 )
 )
 )
    Plaintiff, )
 )
    v. )    Civil Action No.:_____
 )
DISTRICT OF COLUMBIA )
(A Municipal Corporation) )    JURY DEMANDED
441 Fourth Street, N.W. )
Washington, DC 20001 )
 )
    Defendant. )
 )
Serve: Honorable Muriel Bowser, )
    Mayor of the District of Columbia )
    c/o Tabitha Braxton, Staff Assistant )
      Gladys Herring, Executive Assistant; or )
    Designated Representative )
    Executive Office of the Mayor )
    1350 Pennsylvania Avenue, N.W., Suite 316 )
    Washington, DC 20004 )
 )
Serve: Honorable Karl A. Racine, )
    Attorney General of the District of Columbia )
    c/o Designated Representative )
    Office of the Attorney General for D.C. )
    441 Fourth Street, N.W. )
    Washington, DC 20001 )
_____)

## COMPLAINT

    **COMES NOW** the Plaintiff Donatus U. Duru, by and through his undersigned counsel, and sues Defendant District of Columbia for the cause of action stated as follows:

## INTRODUCTORY STATEMENT

1. Plaintiff Donatus U. Duru ("Plaintiff" or "Mr. Duru") brings this civil action pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e, *et seq.*; District of Columbia Human Rights Act, D.C. Code § 2-1401.01, *et seq.*; and the Civil Rights Act of 1991, 42 U.S.C. § 1981a, for relief from discrimination based on national origin (Nigerian).

2. Defendant District of Columbia ("Defendant") discriminated against Plaintiff on the basis of his national origin (Nigerian) during the course of his employment with the District of Columbia Department of Youth Rehabilitation Services ("DYRS" or "the Agency").

## PARTIES

3. Plaintiff Donatus Duru is currently domiciled at 1035 Ward Street, Laurel, Maryland 20707. At all relevant times, Mr. Duru was an employee of DYRS. Plaintiff is a United States citizen.

4. Defendant District of Columbia is a governmental organization and municipal corporation. The DCMPD is a subordinate agency of the District of Columbia government. Defendant is headquartered at 441 Fourth Street, N.W., Washington, DC 20001.

## JURISDICTION

5. This Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as it asserts a claim that arises under the Constitution, laws or treaties of the United States, specifically Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* It further has supplemental jurisdiction over this matter pursuant to 28 U.S.C. § 1367, as it asserts claims that arise under the District of Columbia Human Rights Act, D.C. Code § 2-1401.01, *et seq.*

6. This Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1343.

## VENUE

7. Venue is appropriate and based on the fact that a substantial part of the actions complained of are the result of actions and the employment practices of the Defendant, an Agency of the federal government that operates within the District of Columbia, and occurred in the District of Columbia. 28 U.S.C. § 1391. Venue is further proper in this district because there is no other district in which this action may otherwise be brought. *Id.*

8. Venue is further appropriate because a substantial part of the events or omissions giving rise to this Complaint occurred within the offices of DYRS, which is headquartered in the District of Columbia.

## EXHAUSTION OF REMEDIES

9. Plaintiff has exhausted all of his administrative remedies.

10. On or about August 6, 2012, Plaintiff timely filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") alleging discrimination on the basis of his national origin (Nigerian). Plaintiff's Charge of Discrimination was also cross-filed with the District of Columbia Office of Human Rights ("DCOHR").

11. Plaintiff timely files this action in accordance with the EEOC's Dismissal and Notice of Rights, dated January 30, 2015, which provided Plaintiff the right to file this Complaint within 90 days of receipt of the Notice. EEOC Charge No. 531-2012-01443.

## FACTS

12. Plaintiff hereby incorporates, by reference hereto, the facts, law, and/or allegations contained within the preceding paragraphs, as fully set forth herein.

13. Mr. Duru is Nigerian.

14. Until his termination, Mr. Duru worked for DYRS for almost two (2) decades as a Youth Correctional Officer, which was later changed to Youth Development Representative.

15. During his employment with DYRS, Mr. Duru received positive performance evaluations and performed all of his duties and responsibilities for his position to the expectation of DYRS.

16. Beginning in December 2011, Mr. Duru was assigned to Unity, a secure residential facility at New Beginnings.

17. On December 14, 2011, when Mr. Duru arrived for his midnight shift, he conducted a sweep (*i.e.*, security check) of the facility.

18. At the conclusion of his shift on the morning of December 15, 2011, Officer Brown (American) and two other officers (American) were scheduled to arrive. Only Officer Brown showed up for work and, when she came on shift, did a sweep of the facility.

19. Since no one came to relieve him, Mr. Duru stayed with Officer Brown (American) and Officer Starkey (American).

20. In the afternoon of December 15, 2011, several fights contemporaneously broke out between the youth residents.

21. At all times, Mr. Duru acted appropriately and in accordance with DYRS policies.

22. None of Mr. Duru's five or six co-workers (American), including Officer Starkey (American) and Officer Brown (American), were disciplined, or disciplined as severely as Mr. Duru, for the youth assaults that occurred on December 15, 2011.

23. Each of Duru's co-workers (American), including Officer Starkey (American) and Officer Brown (American), were governed by the same DYRS policies and procedures as Mr. Duru.

24. On or around January 30, 2012, Captain Steven Baynes issued an Advance Notice of a Proposal to Suspend Mr. Duru for fifteen (15) days for allegedly being Absent Without Leave ("AWOL"), which was later sustained by DYRS' Deputy Director.

25. At no time was Mr. Duru AWOL from his position.

26. During the time period that DYRS alleged Mr. Duru was AWOL, Mr. Duru was on approved leave and visiting his family in Nigeria. During his visit, Mr. Duru unexpectedly contracted Malaria and was banned from flying. Each day that Mr. Duru was in Nigeria with Malaria, his wife was in contact with DYRS and keeping them informed of his circumstances.

27. Almost five months after the December 15, 2011 incidents, on or around April 17, 2012, Captain Steven Baynes issued an Advance Notice of Proposal to Remove Mr. Duru based upon the December 15, 2011 incidents.

28. Mr. Duru's termination was effective June 26, 2012.

29. On July 16, 2014, Office of Employee Appeals Judge Monica Dohnji granted Mr. Duru's petition for appeal and, after an Evidentiary Hearing, found that DYRS had not met its burden of proof for the charges it used to terminate Mr. Duru.

30. Based upon the evidence that was present during the Evidentiary Hearing, Judge Dohnji's reversed DYRS' action of terminating Mr. Duru.

31. Similarly situated non-Nigerian officers, like Officer Brown or Officer Starkey, have not been suspended or terminated for similar conduct (*i.e.*, AWOL or DYRS policy violations).

32. Since Mr. Duru believes that the level of discipline he received was discriminatory, Mr. Duru sought relief by filing a charge with the EEOC and DCOHR.

33. Mr. Duru now timely files this Complaint for relief from the discriminatory treatment that he experienced as a result of DYRS' conduct.

## CAUSES OF ACTION

### COUNT ONE
**(Employment Discrimination on the Basis of National)**

34. Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

35. As a Nigerian, Plaintiff is a member of a protected class.

36. Because of his national origin, Plaintiff was subjected to the unlawful conduct and adverse actions alleged throughout this Complaint, including termination, under Title VII and the DCHRA.

37. Defendant's foregoing unlawful adverse actions (*i.e.*, suspension and termination) materially affected the terms, privileges and conditions of Plaintiff's employment.

38. Defendant knew that Plaintiff is Nigerian prior to terminating his employment and suspending him and was aware of the discrimination Plaintiff was subjected because of his national origin.

39. Plaintiff has been treated differently and subjected to different terms and conditions of his employment due to his national origin (Nigerian).

40. Defendant has limited, segregated and classified Plaintiff in a way that deprived him of employment opportunities and otherwise adversely affected his status as an employee because of his national origin (Nigerian).

41. As stated above, other employees who were similarly situated, but members of a different class than Plaintiff, have been treated more favorably then Plaintiff in the terms and conditions of employment.

42. Similarly situated non-Nigerian officers have not been as severely disciplined, if at all, for the same, similar or more egregious conduct.

43. Plaintiff's national origin was a determining factor in Defendant's unlawful conduct toward Plaintiff.

44. Plaintiff's national origin was a motivating factor in Defendant's unlawful conduct toward Plaintiff.

45. The reasons proffered by Defendant for its unlawful conduct are pretextual and Defendant cannot further offer any legitimate reason for its unlawful conduct.

46. Defendant's aforementioned conduct has been intentional, deliberate, willful, malicious, reckless and in callous disregard of the rights of Plaintiff because of his national origin (Nigerian).

47. Defendant discriminated against Plaintiff because of his national origin by engaging in, tolerating or failing to prevent discrimination and by failing to take affirmative action to correct and redress the unlawful employment practices perpetrated against Plaintiff.

48. Defendant is directly liable for the discriminatory acts or omissions of its agents, servants and employees while acting within the course and scope of their employment, under the theory of *Respondeat Superior*.

49. As a direct and proximate cause of Defendant's conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury and monetary damages – including but not limited to past and future loss of income, benefits, promotion and promotional

opportunities, career opportunities, medical expenses and costs – and is entitled to all available legal and equitable remedies.

50.  Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering, and his injury is permanent in nature. Further, Defendant's treatment and actions were ongoing.

51.  Plaintiff has incurred lost wages, loss of reputation and loss of career opportunity now and into the future, and all of the other losses stated without Plaintiff contributing in any way thereto.

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court:

a. Award compensatory damages;

b. Damages and equitable relief for all harm Plaintiff has sustained as a result of Defendant's unlawful conduct including for loss of promotional potential, reputation, lost wages, lost job benefits she would have received but for Defendant's unlawful conduct;

c. Award medical costs and expenses incurred as a result of Defendant's unlawful conduct;

d. Award reasonable attorney fees, costs, and expenses incurred for this action;

e. Order Defendant to institute a policy and procedure to be implemented against discrimination;

f. Equal Employment Opportunity training for Defendant and the supervisory officials at issue herein;

g. Supervisory training for the supervisors at issue herein;

h. Award equitable, declaratory, and injunctive relief; and

i. Award such other and further relief as this Honorable Court deems just and proper.

## EQUITABLE RELIEF

52. Plaintiff hereby incorporates, by reference hereto, the facts, law, and/or allegations contained within the preceding paragraphs, as fully set forth herein.

53. Because of the actions alleged herein, the continued employment of the supervisors at issue herein without training in equal employment opportunity law, rules and regulations, present clear and present dangers to the employees of Defendant and could result in further illegal actions on the party of Defendant, by and through its agents, servants and employees.

WHEREFORE, Plaintiff respectfully prays that this Honorable Court:

    a. Order the Defendant to institute a policy and procedure to be implemented against discrimination;

    b. Equal Employment Opportunity training for Defendant and the supervisory officials at issue herein;

    c. Supervisory training for the supervisors at issue herein; and

    d. Such other and further relief as this Court deems just and proper.

## JURY DEMAND

54. Plaintiff demands a trial by jury on all issues set forth herein.

Respectfully submitted,

By: *donna williams rucker/MBC*

DONNA WILLIAMS RUCKER
 (D.C. Bar No. 446713)
MACKENZIE B. COY
 (D.C. Bar No. 1004847)
RUCKER & ASSOCIATES, P.C.
888 Sixteenth Street, N.W., Suite 800
Washington, DC 20006
Office: (202) 349-9830
Facsimile: (202) 355-1399
Email: drucker@ruckerlawpc.com
      mcoy@ruckerlawpc.com

April 30, 2015

Counsel for Plaintiff